# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Case No. 5:10-CR-6 (HL) |
| ANGEL MENDEZ, | : |
| Defendant. | : |

## ORDER

Defendant Angel Mendez has been charged with possession of cocaine.[1] This charge arises from a traffic stop on August 12, 2009. During the stop, Butts County Sheriff's Office deputies discovered cocaine in the vehicle being driven by Defendant. Defendant has filed a Motion to Suppress (Doc. 21) the cocaine. A hearing on the Motion was held on May 17, 2010. After hearing witness testimony and argument from both parties, the Court finds as follows:

I. FACTS

On August 12, 2009, Deputy Michael Broce, a K-9 handler on the Butts County Sheriff's Office interstate enforcement team, was patrolling Interstate 75. Broce stopped a 2008 Suzuki XL driven by Defendant for speeding and improper lane change. Once Broce turned on his blue lights, the video recording system in his patrol car was activated. The Court reviewed the videotape of the traffic stop during the motion hearing.

---

[1] Defendant has also been charged with illegal re-entry into the United States.

After stopping Defendant, Broce approached the passenger side of the vehicle. As he walked up, he looked into the vehicle and saw that there was no luggage in the vehicle. Broce also noticed that there was a young girl riding in the passenger seat. Broce asked Defendant who the girl was, and Defendant said she was his step-niece.

At Broce's request, Defendant exited and walked to the back of the vehicle. Broce explained to Defendant why he stopped the car. Broce testified during the motion hearing that he observed Defendant's overall demeanor and Defendant was more nervous than the general public would be during a traffic stop. According to Broce, Defendant's breathing became short and rapid and his left eye was twitching in a nervous manner.

Defendant produced a rental agreement for the vehicle for Broce's review. It was a one day rental agreement. The vehicle was rented out of Gwinnett County. Broce asked Defendant where he was going, and Defendant responded that he was going to Moultrie. When Broce asked Defendant about his job, Defendant told Broce that he was employed at Club Caliente and worked at the bar.

Broce has received criminal interdiction training. This involves what he calls "looking beyond the traffic stop" and detecting criminal indicators. Some of the criminal indicators Broce testified about during the hearing were masking agents, overly nervous people, discrepancies in stories, an absence of luggage, certain types of employment, and a short rental time for a vehicle. He has also received

training about source areas, which are areas that have more drug activity or criminal activity than others. Macon, Atlanta, and Gwinnett County are known as source areas.

Broce told Defendant that he was going to give Defendant a warning.[2] While Broce was writing the warning, he asked Defendant if he had any marijuana, cocaine, or methamphetamine in the vehicle. Defendant stated that he did not. Broce asked for consent to search the vehicle. Broce asked Defendant if he knew what "search" meant, and Defendant said that meant Broce was going to look in the vehicle. Broce testified that he noticed Defendant becoming more nervous when he started asking about whether drugs were in the car.

In the meantime, Sergeant Jeff Nix, also with the Butts County Sheriff's Office, arrived at the scene. While Broce talked with Defendant at the rear of the vehicle, Nix spoke to the child passenger. The child said Defendant was her step-uncle, but she did not know his name. Nix called the girl's mother, who stated that the girl was supposed to be with Defendant. Nix also had dispatch run an Amber Alert search and a missing person's search using the girl's name and date of birth, both of which came back negative.

---

[2] While Broce initially told Defendant that he was going to give him a warning, Defendant was actually given citations for speeding and improper lane change after the cocaine was found and the stop completed.

Broce took his drug dog around the vehicle, and the dog alerted. The vehicle was searched, and cocaine was found in the back rest of the second row of seats. Six minutes elapsed between the time Defendant was initially stopped and when he gave consent for Broce to search the vehicle. From the time Defendant was initially stopped and the cocaine was discovered in the vehicle, between 30 and 33 minutes passed.

II.     **ANALYSIS**

After a traffic stop, the ensuing detention of a vehicle's occupant must not be excessively intrusive in that the officer's actions "must be reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (quotation omitted). The stop must be of limited duration and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (quotation omitted). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." Id. An officer who has stopped a vehicle for a traffic violation can only detain a driver "for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999).

The Government argues that it was proper for Broce to detain Defendant for questioning unrelated to the traffic stop because Broce had an objectively

4

reasonable and articulable suspicion that something criminal was afoot. The government points to the following suspicious circumstances: (1) the vehicle was rented for only one day; (2) the vehicle was en route from a source area; (3) the extreme nervousness of Defendant during the stop; and (4) the absence of luggage.

This is a fairly close case. The question boils down to whether there was an articulable suspicion which would justify prolongation of the traffic stop to the point where permission to search was asked for and granted. In the Court's opinion, the reasons given by the deputies to support their suspicion do not support anything in this case. The reasons are all reasons the Court has heard many times in many cases. If Defendant had rented the car for one day and said he was going to Florida, the circumstances may have been suspicious, but there is nothing suspicious about going from Gwinnett County to Moultrie and back in one day. Similarly, if Defendant had been going from Gwinnett County to Florida, the absence of luggage may have been sufficient to raise articulable suspicion. Further, while Broce testified that Defendant acted extremely nervous during the traffic stop, to the extent one can observe nervousness on a tape, the Court saw no nervousness on Defendant's part during the traffic stop. Defendant stood there and responded to both officers, and in fact, the Court has never seen anyone act less nervous. Finally, the fact that Defendant was coming from Gwinnett County does not by itself does not support an articulable suspicion of criminal activity.

5

## III. CONCLUSION

The facts pointed to by the Government do not provide the articulable suspicion necessary to justify the continued investigatory detention of Defendant. Accordingly, Defendant's Motion to Suppress Evidence (Doc. 21) is granted.

This the 18th day of May, 2010.

                                  *s/ Hugh Lawson*
                                  **HUGH LAWSON, SENIOR JUDGE**

mbh